UNITED STATES of America,
Plaintiff–Appellee,

v.

Armand GRAVELY,
Defendant–Appellant.

No. 87–5579.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1987.
Decided Feb. 29, 1988.

---

James Hamilton Walsh, Richmond, Va. (Anne M. Whittemore, Robert E. Draim, McGuire, Woods, Battle & Boothe, Richmond, Va., James D. Welch; Popham, Haik, Schnobrich & Kaufman, Washington, D.C., on brief), for defendant-appellant.

Laura Heiser, Dept. of Justice (Charles F. Rule, Asst. Atty. Gen., Kenneth G. Starling, Deputy Asst. Atty. Gen., John J. Powers, III, David C. Jordan, William H. Gitlow, Karen E. Sampson, Robert E. Bloch, Dept. of Justice, Washington, D.C., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, and MURNAGHAN and WILKINS, Circuit Judges.

MURNAGHAN, Circuit Judge:

Armand Gravely was charged with one count of conspiring to fix the prices of soft drink products in the Norfolk and Richmond, Virginia areas in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and three counts of obstruction of justice, 18 U.S.C. § 1503. Count III, an obstruction count involving destruction of tapes, was dismissed by the court at the close of the government's case. On February 12, 1987, after eight days of trial, the jury returned a verdict of guilty on the Sherman Act count and Count II, an obstruction of justice count involving the destruction of memoranda. The defendant was acquitted of Count IV, an obstruction count involving influencing a witness. On May 28, 1987, the district court denied Gravely's motion for a judgment of acquittal, an arrest of judgment, or a new trial.

Gravely, at times relevant to the present case, was division manager for the Richmond, Virginia division of Allegheny Pepsi–Cola Bottling Co. (Allegheny). Stan Fabian was division manager of Allegheny's Norfolk division. Jerry Pollino was Allegheny's Senior Vice–President of Marketing.

The defendant offers four arguments in support of his contention that he was improperly convicted of violating § 1 of the Sherman Act and a single count of obstruction of justice. They are:

(A) The trial court erred by refusing to grant Gravely leave to interview jurors.

(B) The trial court denied Gravely due process and the right to present an effective defense by permitting the government selectively to use its immunity power.

(C) The jury's verdict of guilt was contrary to the law and the evidence.

(D) The trial court's conduct and erroneous rulings denied Gravely due process and a fair and impartial trial.

Though defendant raises many issues and argues them at length, he does not succeed in demonstrating that his conviction was improper.

A. *The contention that the trial court erred by refusing to grant leave to interview jurors.*

Defendant states that, before returning with their decision, the jurors requested an opportunity to comment on their verdicts, but the request was denied. Following the trial's completion, several jurors interviewed by the press reported that they rendered the verdicts because of "technicalities" and were under "extreme pressure at the end of a two week trial." Another juror, defendant contends, approached a spectator and stated that some jurors believed Gravely innocent but changed their view because of "time pressure." The juror also expressed his belief that given more time the jury would have found Gravely innocent and noted that the trial judge showed "partiality" toward the Government.

Based on these reports, and these alone, defendant sought leave to interview the jurors to determine if the pressure and lack of adequate time for deliberation were self-imposed or the result of outside influence. The request was denied by the district judge.

Requests to impeach jury verdicts by post-trial contact with jurors are disfavored. *Tanner v. United States,* —— U.S. ——, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). Fed.Rule Evid. 606(b) reflects that policy by prohibiting the interrogation of jurors except with regard to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."

■ Defendant's request was properly denied because he made no threshold showing of improper outside influence. *Big John, B.V. v. Indian Head Grain Co.,* 718 F.2d 143, 150 (5th Cir.1983). In *Tanner,* the Supreme Court indicated that in the absence of such a showing neither the sixth amendment nor Fed.Rule Evid. 606(b) requires an inquiry into possible external influence when a threshold showing of external influence has not been made. The trial court's decision not to allow such an inquiry was found not in error. *Tanner,* 107 S.Ct. 2745, 2750–51. The alleged pressure could have been brought by one juror on another and if so the court will not take cognizance of it. *United States v. Barber,* 668 F.2d 778 (4th Cir.1982), *cert. denied,* 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982). Without a threshold showing of improper outside influence, defendant's request is a mere fishing expedition. The Fourth Circuit follows the view that the trial court may deal with such claims as it feels the particular circumstances require and only reverse for abuse of discretion. *United States v. Duncan,* 598 F.2d 839, 866 (4th Cir.1979), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). We perceive no abuse in the trial court's denial of the request to interview jurors. Defendant's suggested rule would allow a convicted defendant to interrogate the jury about occurrence of the not unlikely event of a juror publicly stating that contention was present in the jury room.

B. *The assertion that the trial court denied Gravely due process of law and the right to present an effective defense by permitting the government selectively to use its immunity power.*

Gravely argues that his sixth amendment right to compulsory process and his fifth

amendment due process rights were violated when the court refused to grant immunity or compel the government to grant immunity to coconspirators Randy Allen and Mike Hedges[1] or, alternatively, to suppress the testimony of Pollino and Fabian, the government's immunized witnesses.

The district court lacks power to itself grant immunity. *United States v. Klauber,* 611 F.2d 512, 517 (4th Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980). The decision of whether to grant immunity is in general vested with the prosecution. The defendant bears a heavy burden when seeking to have the district court compel the grant of immunity. *United States v. Karas,* 624 F.2d 500, 505 (4th Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). The Fourth Circuit rule is that the prosecution will be required to confer immunity when (1) the defendant makes a decisive showing of prosecutorial misconduct or overreaching and (2) the evidence supplied would be clearly material, exculpatory and unavailable from any other source. *United States v. Tindle,* 808 F.2d 319, 326 (4th Cir.1986).

■ The defendant must first show misconduct. The mere fact that the government chose to immunize some witnesses but not others does not constitute misconduct. In *Klauber,* the court concluded that the government's decision to grant a witness immunity before the grand jury but refusal to immunize that witness for the defense at trial did not amount to bad faith or misconduct. 611 F.2d at 519. Conduct of like nature is the only possible misconduct that Gravely could allege. Without misconduct there is no requirement that the government provide immunity to defense witnesses.

C. *The claim that the jury's verdict of guilt was contrary to the law and the evidence.*

Gravely was convicted on two counts: violation of § 1 of the Sherman Act and obstruction of justice under 18 U.S.C. § 1503.

1. *Asserted insufficiency of evidence and law to support the verdict as to the obstruction of justice count*

The obstruction of justice count related to destruction of memoranda. Gravely admitted to the destruction but contends that there was insufficient evidence to prove: a) that they were under subpoena, b) that they were material to the grand jury investigation, and c) that he acted with the intent to interfere with that investigation.

■ The documents do not have to be under subpoena, it is sufficient if the defendant is aware that the grand jury will likely seek the documents in its investigation. *United States v. Fineman,* 434 F.Supp. 197, 202 (E.D.Pa.1977), *aff'd,* 571 F.2d 572 (3d Cir.1978), *cert. denied,* 436 U.S. 945, 98 S.Ct. 2847, 56 L.Ed.2d 786 (1978).

The grand jury investigation began in the fall of 1984 as an inquiry into pricing of soft drinks in Virginia Beach, part of the Norfolk division of Allegheny. Richmond was not the initial focus. A subpoena was not directed to the Richmond division until August, 1985. The memoranda destruction occurred in December 1984.

Defendant argues that there was absolutely no evidence to rebut the defendant's testimony that as of late 1984, he understood that the grand jury sought only Norfolk division documents and that he first learned that the Richmond division's documents were sought in the spring of 1985. Further, he argues, the evidence showed that he knew that the originals of the Fabian memoranda had been produced so he had no reason to believe that his copies might later be demanded by the grand jury. Fabian was Gravely's counterpart in the Norfolk division.

■ This is, on investigation, not true. There was sufficient evidence for the jury to infer that Gravely obstructed justice.

---

1. Allen was in charge of Mid–Atlantic Coca–Cola's (Mid–Atlantic) Virginia division that included both the Richmond and Norfolk areas.

In mid–1983 the division was split. Hedges became manager of the Norfolk division.

Jim Jones and Joe Richardson, Gravely's subordinates, testified that Gravely told them about the grand jury investigation and that Gravely held up a file containing the memoranda and said that he feared the investigation would come to Richmond. Further, Fabian testified that he told Gravely that Fabian made copies of the memoranda to prove Pollino's (Gravely's supervisor's) involvement in the conspiracy, and that the president of Allegheny recommended that Fabian purge his files, as the president was doing.

The jury was free to credit that testimony and conclude a) that the memoranda were material to the grand jury investigation, b) that Gravely was aware of the grand jury investigation, c) that he had reason to know that the grand jury would seek the documents and d) that he intended to impede the investigation.

2. *Supposed insufficiency of evidence and law to support the verdict as to the § 1 Sherman Act conviction*

Section 1 of the Sherman Act, 15 U.S.C. § 1 (1973), prohibits contracts, conspiracies, and combinations in restraint of trade. Horizontal price fixing is a root evil forbidden by the Sherman Act. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222–225, 60 S.Ct. 811, 843–845, 84 L.Ed. 1129 (1940).

Gravely argues alternatively that there was insufficient evidence to prove that a conspiracy existed but if so there was insufficient evidence that he joined the conspiracy. He also argues legal issues: that it must be proven that he specifically intended to restrain trade, that the interstate commerce requirement was not met, that the jury was improperly charged concerning the relationship of the Robinson–Patman Act, and the Sherman Act. All of these arguments are factually or legally incorrect.

■ To establish violation of § 1 of the Sherman Act the prosecution need only prove that the defendant willfully joined the conspiracy with intent to further some purpose of it. *United States v. Foley*, 598 F.2d 1323, 1335–36 (4th Cir.1979), *cert. de-*nied, 444 U.S. 1043, 100 S.Ct. 727, 62 L.Ed. 2d 728 (1980). Such was the charge to the jury. The jury's verdict was supported by substantial evidence.

There was evidence that the conspirators met on three separate occasions, and agreed to prices. The prices charged, with a few exceptions, conformed to the agreement. Gravely makes much of a market study prepared by a defense expert and testified to at trial that tended to negate a conclusion that the market was acting under price fixing. There are at least three reasons why the market study argument is specious.

■ First, horizontal price fixing is a *per se* violation of the Sherman Act; there is no need for the prosecution to prove an adverse effect on competition. *Socony-Vacuum*, 310 U.S. at 224–225 n. 59, 60 S.Ct. at 845–846 n. 59. Second, a Sherman Act violation is established even if the conspiracy is unsuccessful. *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 324 (4th Cir.1982). Third, the efforts of the conspirators to enforce their agreement, by policing and subsequent meetings, is further proof of the conspiracy. The jury was free to credit testimony demonstrating Gravely's participation in the conspiracy and was free to disbelieve his testimony of nonattendance or silence, without participating, at meetings.

Gravely argues that the interstate commerce requirement was not shown. Congress wanted to go to the limit of its power under the commerce clause in the Sherman Act. *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974). There are two alternative tests for the interstate commerce under the Sherman Act: the "in the flow of commerce" test, and the "effect on commerce" test. *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980).

The effect on commerce test is more broad and was amply shown at trial. The effect on commerce test is not subject to the "come to rest" and "material change" doctrines that limit the "in the flow of

commerce" test. *Burke v. Ford,* 389 U.S. 320, 321, 88 S.Ct. 443, 444, 19 L.Ed.2d 554 (1967).

■ The parties stipulated that both Allegheny and Mid–Atlantic are large soft drink bottlers maintaining offices in a number of states. Pepsi–Cola according to the defendant's own testimony, is made from a concentrate containing ingredients drawn from all over the world. The concentrate is mixed with water and bottled in Baltimore and shipped to divisions like Richmond for sale to retailers. The jury was properly instructed as to the two tests of interstate commerce. There was ample evidence for them to find that a conspiracy to restrain trade in canned soft drinks in Richmond and Norfolk has a substantial effect on interstate commerce.

Gravely argues that the jury was improperly charged concerning the relationship of the Robinson–Patman Act and the Sherman Act. The Robinson–Patman Act forbids a seller's discrimination in price between different purchasers of commodities of like grade and quality. 15 U.S.C. § 13(a).

The Supreme Court faced the conflict of the Robinson–Patman Act and the Sherman Act in *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The Robinson–Patman Act has a defense of "meeting competition." This allows, for instance, a supplier to give one retailer a lower price than it gives to a second retailer if the supplier is meeting a price offered to the first retailer by the supplier's competitor.

In *United States Gypsum* the defendants argued, as does Gravely here, that an exchange of price lists between competitors was not an illegal price fixing conspiracy but rather an attempt to perfect the meeting of competition defense of the Robinson–Patman Act. The Supreme Court looked with great suspicion on the practice. It indicated that, regardless of its putative purpose, the most likely consequence of price list exchange would be the stabilization of industry prices. Further, the Supreme Court indicated that the potential of concerted price fixing arrangements, which lie at the core of the Sherman Act's prohibitions, heightens in oligopolistic industries. *Id.* at 456–58, 98 S.Ct. at 2883–84. Like the wallboard industry in *United States Gypsum,* the canned soft drink industry is oligopolistic. An industry is oligopolistic when so large a share of its total output is in the hands of so few relatively large firms that a change in the output of any one of these firms will discernibly affect the market price. *Sullivan, Antitrust* 331 (1977).

*United States Gypsum* counsels against exchange of prices by competitors in all markets and particularly in an oligopolistic market. The Supreme Court roundly rejected the contention that the Robinson–Patman Act insulates price list exchanges from Sherman Act scrutiny. The Supreme Court was unwilling to recognize even a limited exception from the Sherman Act for interseller price verification.

■ Gravely argues that the trial court erred by instructing "the Robinson–Patman Act does not require that competition or their agents … personally exchange current or future prices.…" and "the Robinson–Patman Act is not a defense to price fixing." That is a proper reading of *United States Gypsum.*

D. *The assertion that the trial court's conduct and erroneous rulings denied Gravely due process and a fair and impartial trial.*

Gravely presents a series of arguments in support of his contention that his right to a fair trial was abridged. He argues "[f]rom the beginning, the trial court interjected itself into the trial in a partisan, hostile manner, erecting roadblock after roadblock to defendant's introduction of evidence, cross-examination of Government witnesses and presentation of a defense in general."

Gravely sets forth seven areas in which the court's conduct offended him. Neither singly nor in combination do they rise to reversible error. The standard of review for evidentiary rulings is the narrow abuse of discretion standard. Additionally, errors will not result in reversal if harmless.

1. *It is not correct that the trial court improperly interrupted defense counsel's cross-examination of government witnesses.*

■ The trial court is vested with broad discretion to control the mode of interrogation and presentation of evidence to insure that witnesses are treated fairly and the search for truth is not impaired by presentation of extraneous, prejudicial or confusing material. Fed.R.Evid. 611. *See United States v. Atwell,* 766 F.2d 416, 419–20 (10th Cir.1985), *cert. denied,* 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985) (limiting the extent of cross-examination is within the discretion of the trial court and does not warrant reversal absent an abuse of discretion clearly prejudicial to the defendant); *United States v. Cole,* 622 F.2d 98 (4th Cir.1980), *cert. denied,* 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 221 (1980) (district court has discretion to limit needless or confusing inquiry into collateral matters).

2. *We do not find that the trial court improperly prohibited defendant from confronting key witnesses with prior grand jury testimony that was inconsistent with their trial testimony.*

A district court's determination that a witness' prior statements are not inconsistent with trial testimony will not be reversed absent an abuse of discretion. *United States v. Leach,* 613 F.2d 1295, 1305 (5th Cir.1980). Exclusion of prior testimony is proper absent a showing that the testimony is inconsistent with a witness' trial testimony. Fed.R.Evid. 613; Fed.R. Evid. 801(d)(1)(A); *United States v. Martin,* 694 F.2d 885, 888 (1st Cir.1982). The Federal Rules of Evidence, however, reject the view that the prior testimony must flatly contradict trial testimony. Gravely argues that the trial court erred because it required flat contradiction.

■ The district court did not require flat contradiction. The court applied the standard:

To be received as a prior inconsistent statement, the contradiction need not be in plain terms. It is enough if the 'proffered testimony, taken as a whole, either by what it says or by what it omits to say' affords some indication that the fact was different from the testimony of the witness whom it sought to contradict.

*Order,* Joint Appendix at 2325 (quoting *United States v. Barrett,* 539 F.2d 244, 254 (1st Cir.1976)). The standard was proper and its application not an abuse.

3. *It is not established that the trial court improperly denied defendant the right to introduce designated portions of grand jury testimony of witnesses unavailable to defendant.*

Gravely sought to introduce, at trial, portions of the grand jury testimony of witnesses Steve Abbott and Thomas Stewart, two mid-Atlantic employees, who asserted their fifth amendment privilege not to testify at trial. The trial court allowed Gravely to introduce the grand jury testimony but permitted the government to cross-designate portions of the same testimony.

Gravely argues that the allowance for cross-designation was improper. The grand jury testimony came in evidence under Fed.R.Evid. 804(b)(1): former testimony of an unavailable declarant. Gravely argues that the declarants were unavailable as to him, but available to the government since the government could compel testimony by immunity grant. Thus, he argues, the cross-delegated portions were inadmissible.

■ The argument fails. The cross-designated portions, while perhaps not admissible standing alone, are admissible as a remainder of a recorded statement. Fed.R. Evid. 106 allows an adverse party to introduce any other part of a writing or recorded statement which ought in fairness to be considered contemporaneously. The rule simply speaks the obvious notion that parties should not be able to lift selected portions out of context. *United States v. Sutton,* 801 F.2d 1346, 1366–69 (D.C.Cir.1986).

An example of the cross-designation shows the need. Gravely offered over thirty consecutive pages of Stewart's testimony in which he listed countless explanations why Allen and Stewart sent Fabian memoranda regarding deep discounting, but

omitted fourteen intervening lines concerning the memorandum Allen sent to Allen's boss stating Allen had done his part to keep up prices in Virginia.

4. *The assertions are unfounded that the trial court arbitrarily and improperly interfered in defendant's proposed order of proof and excluded highly relevant and probative testimony offered by defendant.*

The trial court first ruled, on a Friday, that Gravely could not call his expert to testify as to market effects until Gravely had produced evidence refuting the existence of the conspiracy. On the following Monday morning when trial resumed, the court reversed its position and allowed the expert to be the defense's first witness. Gravely did not complain that he was unprepared and did not seek a continuance. His complaint now comes too late. *United States v. One 1971 Mercedes Benz,* 542 F.2d 912, 914–15 (4th Cir.1976).

Even if Gravely's complaint is heard, it is unavailing. The sequence of proof lies within the court's discretion, not to be reversed absent gross abuse. *Geders v. United States,* 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976).

Gravely complains that the trial court improperly excluded the following evidence: (1) financial data from Allegheny divisions in other geographic markets for a period of time beyond that alleged in the indictments, and (2) telephone records. The trial court permitted Gravely to offer much economic and financial evidence of pricing in the Richmond and Norfolk markets for a period of over one year prior to and some time after the period charged in the indictment. The evidence denied admission was cumulative and of little or any relevance.

The telephone records were offered to corroborate defendant's position that any agreements between Mid–Atlantic and Allegheny related only to Norfolk since the calls coincided with management changes in the Norfolk divisions. The records summarized calls from Allegheny's Norfolk Division to Mid–Atlantic's Virginia Division. The evidence was beneficial to defendant and its admissibility *vel non* is not a clear cut decision. Nonetheless, it was not an abuse of discretion to reject it. There is a question of relevance since there was no evidence of who made or received the calls.

5. *It is not accurate to maintain that the trial court improperly limited character witnesses offered by defendant.*

Gravely argues that the trial court improperly refused him permission to elicit from his character witnesses statements of their relationship with him or their knowledge of his background, reputation or character. The actual testimony that was not permitted was testimony about Gravely's specific activities with the March of Dimes. Unless evidence of character is an essential element of a charge, claim or defense, proof of character is limited to general good character (reputation as a good person and law abiding citizen). *Michelson v. United States,* 335 U.S. 469, 476, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). Evidence of specific good acts is not admissible. Fed.R. Evid. 405.

6. *The argument fails that the trial court improperly permitted a government attorney to testify against defendant.*

A Department of Justice antitrust attorney testified concerning grand jury matters: *e.g.,* issuance of subpoenas, agreements with defendant's counsel. It might have been better to have a grand juror testify but it was not error to have the attorney testify. His testimony was limited to the ministerial matters of the grand jury and defendant could exploit the interest or bias of the witness with the jury in argument.

7. *The trial court did not offer erroneous and prejudicial comments on the evidence and improperly charge the jury.*

The alleged improper jury charge deals with the relationship of the Robinson–Patman Act and the Sherman Act. As indicated earlier, the trial court's instructions were entirely correct.

The trial court did comment on the evidence. Its allegedly egregious behavior,

according to the defendant, included a comment that the interstate commerce requirement was not a major issue, a comment that there is not much doubt that a conspiracy existed in Norfolk (Gravely was the Richmond division manager), a comment that the jury should focus on testimony of people at alleged conspiratorial meetings.

Gravely finds greatest fault with the last comment because it tells the jury to favor government eyewitness testimony over his testimony and economic evidence that a price fixing conspiracy did not occur. In response to Gravely's objection, the court did call the jury back and advised them that his comment was not meant in any way "to exclude consideration of circumstantial non-eyewitness testimony."

The judge prefaced all his fact comments with a statement that they were not binding and the jury could disregard them. He did not usurp the jury's role, he properly instructed them on the law and his comments on the facts were an appropriate attempt to focus their consideration of the case.

AFFIRMED.