870 F.2d 656
 57 USLW 2449, 1988-2 Trade Cases 68,386
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James J. HARFORD, Defendant-Appellant,
Washington Legal Foundation, Amicus Curiae.
UNITED STATES of America, Plaintiff-Appellee,
v.
Morton M. LAPIDES, Defendant-Appellant,
Washington Legal Foundation, Amicus Curiae.
UNITED STATES of America, Plaintiff-Appellee,
v.
ALLEGHENY BOTTLING COMPANY, Defendant-Appellant,
Washington Legal Foundation, Amicus Curiae.
PEPSICO, INC., Appellant,
United States of America, Plaintiff-Appellee,
v.
ALLEGHENY BOTTLING COMPANY, Defendant,
Washington Legal Foundation, Amicus Curiae.
 No. 88-5139.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1988.
Decided Jan. 11, 1989.
Rehearing and Rehearing In Banc Denied March 20, 1989.
 
 Kenneth E. Newman (Daniel J. Thomasch, Christopher P. Johnson, Michele M. Jette, Donovan, Leisure, Newton & Irvine, Conrad M. Shumadine, Jeffrey H. Gray, Willcox & Savage, P.C., on brief), James Hamilton Walsh (Larry D. Sharp, Hugh M. Fain, III, McGuire, Woods, Battle & Boothe, on brief), Robert K. Morse (David K. Monroe, Peter J. Petesch, Galland, Khrasch, Morse & Garfinkle, P.C., Wayne Lustig, Guy, Cromwell, Betz & Lustig, P.C., A. Raymond Randolph, Daniel I. Prywes, Pepper, Hamilton & Scheetz, Kenneth R. Feinberg, David O. Bickart, Winthrop M. Swenson, L. Elise Dieterich, Kaye, Scholer, Fierman, Hays & Handler, on brief) for appellants.
 (Michael P. McDonald, Daniel J. Popeo, Paul D. Kamenar, Vicki S. Marani, Washington Legal Foundation, on brief) for Amicus Curiae.
 Andrea Limmer (Charles F. Rule, Assistant Attorney General, Kenneth G. Starling, Deputy Assistant Attorney General, John J. Powers, III, Laura Heiser, David C. Jordon, Terrence F. McDonald, United States Department of Justice, on brief) for appellee.
 Before PHILLIPS, CHAPMAN, and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants Morton G. Lapides, James J. Harford and Allegheny Bottling Company ("AP") appeal their convictions of conspiring to fix prices of soft drinks sold by AP and its primary competitor, Mid-Atlantic Coca-Cola Bottling Company, Inc. ("MAC"), between 1982 and 1985 in the Richmond, Norfolk and Baltimore areas in violation of Sec. 1 of the Sherman Act, 15 U.S.C. Sec. 1. Pepsico, Inc., which bought the Pepsi-Cola franchise of AP in 1985, appeals the sentence imposed upon AP by the trial court. AP was sentenced to a fine of $1,000,000 and to three years imprisonment. The imprisonment was suspended and AP was placed on probation for three years with special conditions of probation that required AP to provide four officers and employees "of comparable salary and stature" as the former president and three vice presidents of AP to each perform 40 hours of community service per week for two years in the Baltimore, Norfolk and Richmond areas.
 
 
 2
 We affirm the convictions of all appellants, and we affirm the $1,000,000 fine of AP, which amount has already been paid, and we reverse that portion of the AP sentence which provided for imprisonment, probation and special conditions of probation.
 
 
 3
 * This is the second appeal we have heard arising from convictions related to the Sherman Act violations of various officers and employees of the Coca-Cola and Pepsi-Cola bottling operations in the Norfolk, Richmond and Baltimore areas. In United States v. Gravely, 840 F.2d 1156 (4th Cir.1988), we affirmed the conviction of Armand Gravely, who at one time was division manager for AP in the Richmond area. We now consider the convictions of Allegheny Bottling Company, which was the Pepsi-Cola franchise in the Richmond, Norfolk and Baltimore areas, Morton M. Lapides, who was chairman of AP and James J. Harford, who was president of Mid-Atlantic Coca-Cola Bottling Company, Inc., the Coca-Cola franchisee in these same areas. All of the appellants claim that the evidence against them was not sufficient to support a verdict of guilty, that the trial judge was convinced prior to the trial that all defendants were guilty, that the trial judge allowed his personal beliefs of guilt to affect his conduct of the case, and thereby denied the appellants the right to a fair and impartial trial, that the trial judge interjected himself into the trial and became an advocate for the prosecution and interfered with the defendants' examination and cross-examination of various witnesses, that the trial judge allowed evidence of vicarious criminal liability to be erroneously interjected into the case, that the trial judge erred in admitting certain hearsay declarations of Deborah Hitchings and made other erroneous evidentiary rulings.
 
 
 4
 On the claims of insufficiency of the evidence, we are bound by the rule laid down years ago in Glasser v. United States, 315 U.S. 60, 80 (1942): "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it". The evidence presented by the government was sufficient to meet the Glasser test as to all appellants. The evidence showed that between 1982 and 1985 AP and MAC competed for the soft drink business in the Baltimore, Richmond and Norfolk areas, and that together they controlled at least sixty percent of the soft drink sales in these markets. Although both companies operated in other markets, the price fixing, which is the subject of the present appeal, occurred in the Baltimore, Richmond and Norfolk markets, and it involved primarily 12 ounce cans, 16 ounce non-returnable bottles and 2-liter bottles. During the time in question, both bottlers issued promotional letters to their customers. The letters listed the wholesale price of the products and set forth any promotional discounts applicable. These promotional letters went to convenience stores, grocery chains, and other large purchasers, and the promotional discount was the price off of the wholesale price the customer would pay if it fulfilled certain promotional conditions such as advertising, prominence of display in the store, etc. The promotional letters were usually effective for about a month and were sent out several weeks before their effective date.
 
 
 5
 The crux of the conspiracy was the agreement by AP and MAC to fix the prices and adhere to the prices listed in their promotional letters, and not to reduce the price by offering larger discounts to some of their customers. The conspiracy was proved by the testimony of officers and employees of both AP and MAC. One of the most important witnesses was Jerry Pollino, a vice president of AP. He had worked with appellant James Harford when they were both employed by Canada Dry. In the spring of 1982, Morton M. Lapides called AP president, James Sheridan, and Jerry Pollino to a meeting and stated his concern that MAC was deviating from the prices listed on its promotional letters and was offering bigger discounts to some customers. He suggested that since Pollino and Harford had previously worked together, that Pollino arrange a meeting with Harford at the convention of the Maryland Soft Drink Association and discuss with him the adhering by both companies to the prices stated in their promotional letters. This meeting took place and Harford agreed to look into the reasons for any deviations by MAC and both men agreed that they would stick to the prices set forth in their promotional letters in the future. The results of this meeting were reported to Sheridan and Lapides.
 
 
 6
 Although the original agreement was between top management of the two competitors, compliance with the agreement became the work of the managers in Norfolk, Baltimore and Richmond. Jerry Pollino testified that he and Reginald Coe, MAC's Baltimore division vice president, had numerous meetings and telephone conversations between September 1982 and January 1985 in which they discussed their pricing, their promotional letters, and they agreed on future promotional discounts. This testimony was confirmed by Coe. There was testimony from other officers and employees of both companies about meetings and agreements as to price. Most of these witnesses were granted immunity pursuant to 18 U.S.C. Sec. 6001, et seq. This testimony was supported by various documents, and a convincing case of price fixing was presented by the prosecution and believed by the jury.
 
 II
 
 7
 There was sufficient evidence to sustain the conviction of Lapides of a conspiracy to fix prices in restraint of trade. Section 1 of the Sherman Act, 15 U.S.C. Sec. 1, prohibits contracts, conspiracies and combinations in restraint of trade. Agreeing with a competitor to fix prices of similar products in a market is the typical horizontal price-fixing forbidden by the Sherman Act. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 222-225 (1940).
 
 
 8
 Both Sheridan and Pollino testified that Lapides conceived the idea of a price-fixing arrangement with MAC and he suggested the time and the place of the first meeting between Pollino and Harford. The testimony was also sufficient to establish that Lapides kept in close touch with the progress of the pricing agreement, and he made suggestions and gave orders as to how to proceed at various times. He also suggested cover stories for meetings between MAC and AP officials so that the meetings could be explained in an innocent light. There is no merit to his claim that the prosecution improperly argued to the jury or tried him on a theory of "vicarious liability" because of what "he should have known." There was sufficient evidence to convict Lapides by what he did, what he said, and the orders he gave his employees in furtherance of the conspiracy.
 
 III
 
 9
 We find no merit to Harford's claim that his motion for severance should have been granted because of the prejudicial spillover effect of evidence admitted against other defendants. Under Federal Rule of Criminal Procedure 12(b)(5) a motion for severance must be made before trial. Harford did not do this although there was a period of more than five months between the indictment and the trial, and he was aware from pretrial motions and the testimony in Gravely as to what evidence to expect at his trial. His failure to file a timely motion waived his right to a severance. United States v. Moreno Morales, 815 F.2d 725 (1st Cir.), cert. denied, 108 S.Ct. 458 (1987).
 
 
 10
 There was ample evidence to support the conviction of Harford. Pollino testified about his meeting with Harford at the Maryland Soft Drink Association in Ocean City and their agreement that each would stay with the published price in the promotional letter. Harford had other meetings and telephone conversations with Pollino and Sheridan that were in furtherance of the conspiracy.
 
 IV
 
 11
 We find no merit to the appellant's claims that the trial judge demonstrated pretrial bias, acted as an advocate for the prosecution, unfairly chastised the defense counsel, improperly questioned witnesses or impeded the examination or cross-examination of witnesses by defense counsel or otherwise conducted the trial in a manner partial to the prosecution. We have carefully reviewed the record and find that almost all of the court's comments to which the appellants object were made in the absence of the jury and they did not disparage defense counsel or defendants in the eyes of the jury. This was a long, hard-fought and hotly contested trial. In the course of such a proceeding, tempers become frayed and statements are made in anger, but we find nothing to support any claim of bias or improper conduct on the part of the trial judge. His questions to witnesses were asked in an effort to clear up misunderstandings, and his claimed interruption or interference with cross-examination was an effort to prevent repetition and to move along a trial that eventually consumed seven weeks.
 
 V
 
 12
 We find no merit to the claims of error in jury instructions. Viewing the charge in its entirety, the court properly covered all of the necessary legal points and adequately charged on the appellants' theories of defense.
 
 VI
 
 13
 We find no error in the admission of the statements of Deborah Hitchings through the testimony of Theodore Rivers. The testimony was sufficient to find that Hitchings, as a marketing representative of MAC, was a co-conspirator, and that her statements to Rivers that she could not give him a lower price, and he could not get a lower price from Pepsi (because of the agreement AP and MAC had to adhere to a minimum price of $5.50 a case) was made in furtherance of the conspiracy and was therefore admissible under Evidence Rule 801(d)(2)(E).
 
 VII
 
 14
 Following conviction, the district court fined AP $1,000,000, which was the maximum punishment for a corporation under the Sherman Act, but the court added a three-year term of imprisonment. Execution of the sentence of imprisonment was suspended, together with $50,000 of the fine. AP was also placed on probation for three years with special conditions that it be required to provide four individuals of comparable salary and stature to individuals the court found to be involved in the conspiracy who would perform 40 hours of community service each week for a two year period. AP promptly paid the $1,000,000 fine, and it now correctly asserts that the efforts of the district court to imprison it or place it on probation with special conditions are beyond the power of the court. This part of the sentence is a nullity. The government has conceded error on this point. In Melrose Distillers, Inc. v. United States, 359 U.S. 271 (1959), the Supreme Court clearly held that a corporation may not be sent to jail. The language of 15 U.S.C. Sec. 1 is abundantly clear that $1,000,000 is the maximum a corporation may be fined for violating this section, and there are no additional or alternate sanctions which would even suggest imprisonment or probation of a corporation. Therefore, the case must be remanded to the district court to correct the sentence imposed upon AP so as to remove everything except the $1,000,000 fine.
 
 
 15
 AFFIRMED AS TO ALL CONVICTIONS; REMANDED TO CORRECT THE SENTENCE OF ALLEGEHENY BOTTLING COMPANY.