54 F.3d 774
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sandra Kay HOOKER, Defendant-Appellant.
 No. 94-5863.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 28, 1995.
Decided May 15, 1995.
 
 Gregory B. English, English & Smith, Alexandria, VA, for appellant. Helen F. Fahey, United States Attorney, Mark G. McConnell, Special Assistant United States Attorney, Alexandria, VA, for appellee.
 Before MICHAEL and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Sandra Hooker, appeals her conviction after a jury trial on one count of theft of government property, 18 U.S.C. Sec. 641 (1988). Finding no reversible error, we affirm.
 
 
 2
 * Hooker worked as a civilian employee at the Public Works Section of the United States Marine Corps Base at Quantico, Virginia. Hooker was interviewed by Special Agent Paulus of the Naval Criminal Investigative Service regarding stolen computer equipment. Hooker denied involvement in the theft, but confided that she had a prior criminal record that she had not disclosed on her employment application.
 
 
 3
 Agent Paulus became suspicious that Hooker had stolen the equipment. Accordingly, Agents Paulus and Goldstein conducted a surveillance of Hooker's home from one and a half blocks away. When Hooker came home, Agent Paulus approached Hooker and requested Hooker's consent to search the home. Hooker refused this request. Later that afternoon Hooker and her son left the home and drove away. The agents followed Hooker and conducted a warrantless and otherwise unjustified stop of Hooker's car. Hooker then consented to a search of the car, but the computer equipment was not found. Hooker drove away, and the agents returned to their surveillance position.
 
 
 4
 Later that evening Hooker returned home. At 7:00 p.m., Hooker walked down the street to speak with the agents. Hooker asked the agents if they would like to search her son's car. After the agents searched that car, Hooker asked them if they still wanted to search the home. Hooker stated that her conscience was bothering her, that she would agree to a search of her home, and that she had the computer equipment. The agents told Hooker that they did not have a warrant and that Hooker did not have to consent to a search of the home. Hooker stated that she understood, and she read and signed a consent to search form. The agents entered Hooker's home and recovered the missing computer equipment. Hooker maintained that she found the computer equipment near the loading dock when she was leaving work and that out of security concerns she had taken it home with the intention of returning it.
 
 
 5
 In addition to the theft count, Hooker was also indicted for wilfully making a false statement on her federal employment application. The count alleged that Hooker had answered "no" on the application to the question asking if she had ever been convicted of a felony. This count was based on Agent Paulus's testimony before the grand jury. The Government dismissed this count after it was revealed that Hooker had not answered "no" to this question, but had merely left it blank.
 
 II
 
 6
 Hooker contends that the district court erred in failing to suppress the evidence seized from her home. We review the district court's legal conclusions de novo, but review the factual findings underlying those conclusions for clear error. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (1992). The material facts surrounding events leading up to the consent search of Hooker's home are not disputed. Hooker argues that the district court erred in concluding that the search of her home was not tainted by the prior illegal stop of her car.
 
 
 7
 Police officers may conduct a warrantless search of a home pursuant to the owner's consent. See Vale v. Louisiana, 399 U.S. 30, 34-35 (1970). If the consent is given after there has been an unlawful seizure or other improper police conduct, however, the prior illegality might taint the consent, thereby mandating suppression of any evidence seized. See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). The question is whether the evidence seized was obtained through exploitation of the prior illegality, or whether there was sufficient attenuation between the illegality and the consent so as to dissipate the taint. Id. at 491. To determine whether the taint has dissipated, we must examine the length of time that passed between the illegality and the consent, the presence of intervening circumstances between the two events, and the flagrancy and purpose of the illegality. See Brown v. Illinois, 422 U.S. 590, 603-04 (1975) (citations omitted).
 
 
 8
 We reject Hooker's argument because her consent to a search of her home was sufficiently attenuated from the prior illegal search of her car such that any taint was dissipated. An hour passed between the two searches. Further, Hooker's voluntary action of coming out of the home, approaching the agents, and stating that her conscience was bothering her and that the agents could enter the home and retrieve the computer equipment served as an intervening circumstance between the two searches. Although no legal justification for the stop of Hooker's car existed, the agents' conduct was not flagrant. Agent Paulus testified that she thought she had the legal authority to conduct a stop, and in any event, they only searched Hooker's car after obtaining consent.
 
 
 9
 Finally, the agents conducted their surveillance from more than a block away from the house, and Hooker was not home during most of this time. Hence, their conduct was not so coercive such that Hooker's will was overborne. Under these circumstances, we find that Hooker's consent to search her home was sufficiently attenuated from the prior illegal stop of her car such that any taint was dissipated.
 
 III
 
 10
 Hooker next argues that the district court abused its discretion by limiting the scope of counsel's cross examination of Agent Paulus in three areas. First, counsel attempted to elicit testimony from Agent Paulus that she had erroneously believed she had the legal authority to stop Hooker's car. Second, counsel attempted to impeach Agent Paulus with testimony from the suppression hearing where Agent Paulus testified that all Jencks material relating to her testimony had been turned over to the defense. In fact, a memorandum Agent Paulus wrote about Hooker's case had not yet been disclosed by the Government (although counsel for Hooker had obtained a copy elsewhere). Finally, counsel attempted to impeach Agent Paulus with her testimony before the grand jury that Hooker had committed an affirmative misrepresentation on her employment application in response to a question about her prior criminal history. In fact, the evidence showed that Hooker did not affirmatively misrepresent anything, she merely failed to answer the question.
 
 
 11
 Cross examination is generally limited to the subject matter inquired into on direct examination and matters affecting the witness's credibility. Fed.R.Evid. 611(b). When a witness's credibility is in issue, specific instances of the witness's conduct may be inquired into on cross examination only if probative of truthfulness or untruthfulness. Fed.R.Evid. 608(b). The trial court is vested with broad discretion to control the mode of interrogation and the presentation of evidence. United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir.1988). A trial judge should allow cross examination on a prior incident directly related to truthfulness, such as where the witness was patently deceitful; however, the judge has the greatest discretion where the incident is only inferentially related to truthfulness.
 
 
 12
 We find that the district court did not abuse its discretion in the present case because the matters on which counsel sought to cross examine were, at most, inferentially related to Agent Paulus's credibility. For instance, whether Agent Paulus held an erroneous belief that she had legal authority to stop Hooker's car was irrelevant to whether Agent Paulus's testimony was truthful. Additionally, that Agent Paulus had failed to disclose one item of Jencks material prior to testifying at the suppression hearing was not probative of Agent Paulus's truthfulness. Defense counsel could not establish any basis to believe that that Agent Paulus had intentionally withheld the evidence. Similarly, that Agent Paulus testified before the grand jury that Hooker had made an affirmative misrepresentation on her employment application was not probative of Agent Paulus's truthfulness. Hooker had previously told Agent Paulus that she failed to disclose her prior criminal record. Agent Paulus could reasonably have labored under a mistaken belief that Hooker made an affirmative misrepresentation on her application. In other words, counsel's proffer fell far short of showing that Agent Paulus was patently deceitful.
 
 
 13
 We accordingly affirm Hooker's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED