**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4214

DAVID DARNELL NEAL,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-95-315-A)

Submitted: March 25, 1997

Decided: October 17, 1997

Before NIEMEYER and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

Cary S. Greenberg, GREENBERG, BRACKEN & TRAN, Alexandria, Virginia, for Appellant. Helen F. Fahey, United States Attorney, Thomas M. Hollenhorst, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

David Darnell Neal appeals his conviction for distribution of fifty grams or more of crack cocaine, 21 U.S.C. § 841 (1994), and his 120-month sentence. We affirm his conviction and sentence but dismiss his challenge to the district court's decision not to depart below the sentencing guideline range.

In October 1994, Neal was introduced to undercover Agent Antonio Marquez of the Drug Enforcement Administration (DEA) by a confidential informant, Paul Adgerson, who worked with Neal at the Cooker Bar & Grill in Fairfax, Virginia. Neal agreed to supply Marquez with three ounces of crack. The next day Neal called Adgerson to say that his source did not want to come to Virginia. Instead, Neal met with Marquez and Adgerson on October 12, 1994, to get acquainted. Neal said his supplier was nervous because the amount was more than Neal had asked for in the past, but Neal expressed a desire to work with Marquez and gave him his pager number. This meeting was recorded on video and audio tape.

Later, a deal was arranged. On October 17, 1994, Neal met Marquez in the parking lot of the Cooker. Neal drove up with a man and a woman and went into the restaurant with them. He then came out, retrieved a package from his own car, got into Marquez's car and gave Marquez the package, which contained 84.38 grams of crack. Marquez gave Neal $3300 in cash. Neal took it into the restaurant, then came to the door and nodded to indicate that the deal was successfully concluded.

Another three-ounce deal was set for October 26, 1994, at a park near the Pentagon City Mall. However, Neal did not come. While Marquez was waiting for him there, Neal paged him to say that his source had just been arrested, that he was hot, and that he was going

2

to lie low for awhile. In December 1994, Marquez called Neal, who said he was still not doing anything.

In the early morning of June 23, 1995, Marquez and other DEA agents executed a search warrant at Neal's apartment and arrested Neal. The agents seized 2.295 grams of marijuana, a .380 caliber semi-automatic handgun, and ammunition. Neal made two incriminating statements immediately after his arrest. He said he remembered selling crack to Marquez and identified the two people with him as his source, "Frank," and Carmen Sanchez. He said he was paid $150 for arranging the sale. He also said he had not been forced or threatened into the transaction but had done it to make money.

Neal pled not guilty and moved to suppress his statements, the marijuana, the gun, and the ammunition as fruits of an unlawful search. He argued that the search was unlawful because the officers had not observed the "knock and announce" statute. See 18 U.S.C. § 3109 (1994). After a hearing, the district court denied the suppression motion.

During the government's case-in-chief, Agent Marquez testified about his conversations with Neal, the three-ounce purchase on October 17, 1994, and the statements Neal made after his arrest. Neal called Adgerson as a defense witness in an attempt to undermine his credibility. Adgerson testified that Neal supplied him with cocaine. Under cross-examination by the government, Adgerson said he worked with Neal at the Cooker for two years before the sale to Marquez and that Neal occasionally talked about selling marijuana and cocaine and sold both marijuana and crack to staff members.

Neal then testified on his own behalf that he never sold drugs at the Cooker "or had anything to do with drugs with Paul or anyone else." He said that Adgerson had badgered him for months to sell him some drugs and that he had complied in a weak moment when he was having financial difficulties, with the help of a friend, Carmen Sanchez, who knew a drug dealer. He further testified that he was unable to cooperate with the government to help himself after his arrest because he did not know anyone involved with drugs; he said Sanchez was just a friend.

On cross-examination, the government produced the marijuana found in Neal's bedroom and questioned him about it. Neal admitted possessing the marijuana, which was then introduced into evidence. Defense counsel objected that the marijuana was not relevant either to the charged offense or to Neal's entrapment defense. However, the court found that it was permissible as impeachment.

Neal first contends that the district court erred in denying his suppression motion. Under the federal "knock and announce" statute, officers may make a forcible entry to execute a search warrant if, after giving notice of their authority and purpose, they are refused entry or a significant lapse of time occurs. United States v. Kennedy, 32 F.3d 876, 882 (4th Cir. 1994). A lapse of fifteen seconds has been held to be sufficient. United States v. Spriggs, 996 F.2d 320, 322-23 (D.C. Cir. 1993). Failure to comply with the requirements of the statute renders a search illegal, but exigent circumstances such as the possibility that drugs will be destroyed or danger to the officers may justify noncompliance. Kennedy, 32 F.3d at 882 (citations omitted). Neal testified at the suppression hearing that he heard the agents yell and the door crash open simultaneously. The government proffered that the agents knocked, announced themselves, and waited fifteen seconds before they broke into Neal's apartment to execute the search warrant in June 1995. Agent Marquez was prepared to so testify. The government also argued that exigent circumstances were present because two weeks earlier the informant told the agents that Neal had marijuana and a gun in his apartment.

The court's reasons were announced only from the bench and are not preserved in the record, apparently because the electronic recording equipment failed. The parties have not explained the court's reasons in their briefs. Fortunately, we need not decide whether the district court was correct in denying the suppression motion because the government did not introduce any of the physical evidence seized in its case-in-chief. Illegally seized evidence may be introduced to impeach a defendant's "answers to questions put to him on cross-examination that are plainly within the scope of the defendant's direct examination." United States v. Havens, 446 U.S. 620, 627 (1980).

Moreover, even if the search was illegal, Neal's incriminating statements were still admissible in the government's case-in-chief

4

because, when there is probable cause to arrest, a confession made outside the home after an illegal in-home arrest is not subject to the exclusionary rule unless there is a causal connection between the illegal conduct and the statements. New York v. Harris, 495 U.S. 14, 17 (1990); United States v. McCraw, 920 F.2d 224, 230 (4th Cir. 1990) (finding causal connection between illegal in-home arrest and statements made in home). The agents had probable cause to arrest Neal, his statements were made on the way to the courthouse and at the courthouse, and he did not claim that the manner of entry caused him to make the statements.

Neal contends that the marijuana was not admissible during his cross-examination, either as evidence of predisposition or to impeach his testimony. The government concedes that the marijuana was "probably not admissible" under Fed. R. Evid. 405(a) or 608(b).[1] However, the government contends that it was admissible under Fed. R. Evid. 404(b) to show predisposition. There is support for this position in the caselaw, even though the marijuana possession was subsequent to the crack sale. See United States v. Watson, 894 F.2d 1345, 1349 (D.C. Cir. 1990); United States v. Posner , 865 F.2d 654, 658 (5th Cir. 1989). But see United States v. Boyd , 595 F.2d 120, 127 (3d Cir. 1978).

Moreover, as in Mateos-Sanchez, once Neal admitted his possession of marijuana, admission of the actual substance into evidence was harmless error. See Mateos-Sanchez, 864 F.2d at 237.[2] Consequently, we find that the district court did not abuse its discretion in permitting the government to question Neal about the seized marijuana and that its introduction into evidence was harmless error.

_____

**1** Under Rule 608(b), the government could have asked Neal whether he possessed marijuana on the day of his arrest but, whether he admitted or denied it, could not have introduced the marijuana into evidence. See United States v. Mateos-Sanchez, 864 F.2d 232, 237 (1st Cir. 1988); United States v. Leake, 642 F.2d 715, 719 n.2 (4th Cir. 1981); United States v. Whitehead, 618 F.2d 523, 529 (4th Cir. 1980).
**2** As in Mateos-Sanchez, Neal did not request a limiting instruction and none was given.

5

Neal also claims that the marijuana was unduly prejudicial and that the district court failed to perform the balancing test necessary under Fed. R. Evid. 403 with respect to the marijuana. However, the court considered the prejudicial effect of both the marijuana and the handgun seized during the search and decided that only the handgun would be more prejudicial than probative. The court did not abuse its discretion because Adgerson had already testified that Neal sold marijuana as well as cocaine and crack.

Neal maintains that the district court abused its discretion when it rejected two of Neal's proposed voir dire questions. He wished to ask whether any of the potential jurors believed that no one could be entrapped or induced into committing a crime and whether any of them would be unable to acquit a defendant who appeared to have been entrapped into committing a crime.

A district court has broad discretion in conducting voir dire, but may not hinder the defendant from making reasonable use of his challenges. United States v. Brown, 799 F.2d 134, 135-36 (4th Cir. 1986). In this case, the district court questioned the jurors concerning their exposure to law enforcement, including undercover operations, and substance abuse, and asked whether any of them had attitudes toward cocaine or cocaine distribution that would prevent them from giving a fair and impartial verdict. The court also asked whether, in light of the questions already asked, any of them could not render an impartial verdict on the facts and the instructions on the law which would be given by the district court. These questions were adequate to address defense counsel's concern that some jurors might reject an entrapment defense out of hand. The district court did not abuse its discretion in refusing to question the jurors about their attitudes toward a legal issue before they had been instructed about it.

After Neal's conviction, his attorney unsuccessfully sought leave to question the jurors about the effect on their verdict of the verdict in the O.J. Simpson trial, which was read on television during a lunch break while the jury was deliberating in Neal's case. Post-trial requests to impeach a jury verdict by contact with jurors are disfavored and must be supported by a threshold showing of improper outside influence on the jurors. See Fed. R. Evid. 606(b); Tanner v.

6

United States, 483 U.S. 107, 125 (1987); United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988).

Here, the district court found that a verdict in an unrelated case on the west coast did not provide a basis for such questions to the jury. The court's decision is reviewed for abuse of discretion. Gravely, 840 F.2d at 1159. Even if the jurors saw the verdict in the Simpson case, it would not have been an improper outside influence because it had nothing to do with Neal's case. Cf. United States v. Pomponio, 517 F.2d 460, 462 (4th Cir. 1975) (newspaper articles containing information about the trial which was not presented in court might have improperly influenced unsequestered jury). Neal did not make the necessary threshold showing and, therefore, the district court did not abuse its discretion in denying his motion to question the jurors.

After reviewing the presentence report, which recommended a guideline range of 97-121 months but noted that Neal was subject to a mandatory sentence of 120 months, Neal requested a sentence below that statutory minimum under the safety valve provision. See USSG § 3C1.2; 18 U.S.C. § 3553(f) (1994). The government opposed application of the safety valve provision on the ground that Neal had not fulfilled the last requirement: that he truthfully provide to the government all information he had about his offense. Despite a last-minute meeting with federal agents and the government attorney, Neal failed to reveal anything more than he told the agents in his post-arrest statements, i.e., that his friend Carmen Sanchez had connected him with a drug dealer named Frank.

A defendant has the burden of proving that he qualifies for application of the safety valve provision. United States v. Beltran-Ortiz, 91 F.3d 665, 669 (4th Cir. 1996). At sentencing, Neal's attorney told the court that Neal had told everything he knew. The government attorney did not discuss the last-minute interview further; he argued simply that Neal had not accepted responsibility and should not receive the two-level adjustment recommended by the probation officer. Had the court agreed, Neal's guideline range would have been 121-151 and the safety valve provision would not have come into play. The district court found that Neal had accepted responsibility but also found that he had not met the conditions for a sentence below the mandatory minimum.

7

Neal argues that the district court erred in not making a factual finding to explain why he had not complied with the requirement in § 3553(f). However, viewing the record as a whole, it is clear that the court accepted the government's assessment that Neal had not provided all the information he possessed about his contacts with drug dealers. While a clear finding would have been the better practice, we will not remand for the court to make its implicit finding an explicit one.

Neal also asked for a downward departure based on aberrant behavior, USSG Ch. 1, Pt. A(d), lesser harms, USSG§ 5K2.11, and sentence manipulation. The last two arguments were based on the disparity between crack and powder cocaine sentences. The district court found "no basis for any departure in this case." Neal argues on appeal that the district court failed to recognize its authority to depart on the grounds he urged. However, the record is devoid of any indication that the district court based its decision not to depart on a belief that it lacked the legal authority to depart. Only in that instance is the court's decision reviewable. See United States v. Brock, No. 96-4405, 1997 WL 83560 (4th Cir. Feb. 28, 1997) (citing United States v. Bayerle, 898 F.2d 28, 31 (4th Cir. 1990)). When the court determines that a departure is not warranted, appellate review is not available. Id. Consequently, this portion of the appeal must be dismissed.

We therefore affirm Neal's conviction and sentence. We dismiss that portion of the appeal which contests the district court's decision not to depart. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, DISMISSED IN PART