**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clarence M. MITCHELL, III,**
**Defendant–Appellant.**

**No. 88–5054.**

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1989.

Decided Sept. 26, 1989.

William Moses Kunstler, New York City, Blaine A'mmon White (Lee & Harvey, Edward Smith, Jr., Cummings & Smith, P.A., Baltimore, Md., on brief), for defendant-appellant.

Gary Patrick Jordan, First Asst. U.S. Atty., Bel Air, Md. (Breckinridge L. Willcox, U.S. Atty, Washington, D.C., Max H. Lauten, Asst. U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before WINTER, PHILLIPS, and MURNAGHAN, Circuit Judges.

HARRISON L. WINTER, Circuit Judge:

Defendant Clarence M. Mitchell, III, appeals his convictions for conspiring to obstruct a grand jury investigation in violation of 18 U.S.C. § 371 and endeavoring to obstruct a grand jury investigation in violation of 18 U.S.C. § 1503. Although Mitchell contends that the district court made a number of errors requiring reversal, we do not find his arguments persuasive. We affirm.

## I.

In May, 1985, Mitchell was called to testify before a grand jury investigating possible tax evasion and drug trafficking by Melvin D. Williams, a Baltimore resident suspected of leading a major narcotics organization. In a search of Williams' home, government agents had found a document, dated October 4, 1983, which memorialized an agreement between Mitchell's realty firm, Mitchell Properties, Inc. (Mitchell Properties), and Williams' company, Scrapp Investment Co., Inc. (Scrapp). Under the terms of the agreement, Mitchell Properties was to attempt to obtain financing for Scrapp so that Scrapp could rehabilitate an apartment building located in Baltimore City. The document indicated that Mitchell Properties had received $50,000 from Scrapp as a retainer, and was signed by Mitchell and Scrapp's president, James Rogers.

In testimony before the grand jury, Mitchell asserted that he had received only $5,000 from Rogers. Appearing before the grand jury after Mitchell, Rogers testified that on October 4 he had personally given Mitchell a bag containing $50,000 in cash. An investigation of Mitchell Properties' financial records revealed deposits on that date in the amount of $15,000 in cash. To explain these deposits, Mitchell produced documents purporting to record a $15,000 loan he had obtained from a businessman, Jerry L. Hill.

At Mitchell's trial, Hill testified that the documentation of the $15,000 loan was spurious. He stated that, upon Mitchell's request, he had drawn up sham loan documents to enable Mitchell to explain the deposits of October 4 to the grand jury. These documents included backdated promissory notes and a memorandum listing, among others, a bogus loan for $15,000 from Hill to Mitchell. Hill testified that Mitchell believed these documents would be credible since Hill routinely dealt with large amounts of cash in the operation of certain service stations he owned.

The jury found Mitchell guilty of one count of conspiring to obstruct a grand jury investigation and one count of endeavoring to obstruct a grand jury investigation. This appeal followed.

## II.

Mitchell asserts five separate grounds for reversal in this appeal. We address them seriatim.

### A. *Immunity for Defense Witness Melvin Williams*

█ Mitchell's first contention is that the district court should have granted his request for immunity for defense witness Melvin Williams, who invoked his fifth amendment privilege against self-incrimination and refused to testify at trial. Mitchell contends that Williams was present at the October 4 meeting between Rogers and Mitchell, and that, had the government granted him immunity, Williams would have corroborated Mitchell's story by testifying that Rogers gave Mitchell only $5,000. At trial, the government refused to grant Williams immunity on the ground that he was under investigation for alleged drug trafficking.

The parties agree that our decision in *United States v. Gravely*, 840 F.2d 1156 (4 Cir.1988), is controlling on this point. In *Gravely*, we announced that while "[t]he decision of whether to grant immunity is in general vested with the prosecution," the rule in this circuit "is that the prosecution will be required to confer immunity when (1) the defendant makes a decisive showing of prosecutorial misconduct or overreaching and (2) the evidence supplied would be clearly material, exculpatory and unavailable from any other source." *Id.* at 1160. *Accord United States v. Pinto*, 850 F.2d 927, 935 (2 Cir.), *cert. denied sub nom. Vence v. United States*, — U.S. ——, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988) *and Castano v. United States*, — U.S. ——, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988). We also cautioned that a "defendant bears a heavy burden when seeking to have the district court compel the grant of immunity." *Gravely*, 840 F.2d at 1160.

Mitchell fails to meet *Gravely*,'s first requirement. The government refused to

grant immunity to Williams because he was the subject of a criminal investigation, and we do not think that this amounted to "prosecutorial misconduct or over-reaching." *Cf. United States v. Todaro,* 744 F.2d 5, 9 (2 Cir.1984) (" '[t]rial judges should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution' ") (quoting *United States v. Turkish,* 623 F.2d 769, 778 (2 Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981)), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985). Accordingly, we hold that the district court did not err in refusing to compel immunity for Williams.

### B. *Impeachment of Prosecution Witness Jerry Hill*

■ Mitchell's second contention is that the district court impermissibly prevented him from introducing evidence to impeach the motives of prosecution witness Jerry Hill. Specifically, he argues that the district court should have allowed him to introduce the testimony of Baltimore City police officer Charles Carter concerning the department's investigation of suspected drug trafficking by Hill in 1985 and 1986. Mitchell asserts that Officer Carter's testimony would have tended to show that the department abandoned the investigation in exchange for Hill's cooperation in the Mitchell prosecution. At trial, Hill stated that the government had offered him immunity with respect to the bogus loan documents he had prepared, but denied that it had made any promises with respect to other criminal charges.

■ It has been settled for some time that due process requires a defendant be given the opportunity to present evidence concerning any promises, understandings or agreements between the government and a key prosecution witness relating to the witness' testimony. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Wise v. Warden,*

*Maryland Penitentiary,* 839 F.2d 1030, 1033 (4 Cir.1988); *Joyner v. King,* 786 F.2d 1317, 1319 (5 Cir.), *cert. denied sub nom. Joyner v. Phelps,* 479 U.S. 1010, 107 S.Ct. 653, 93 L.Ed.2d 708 (1986). This is so even if the government's promise of leniency is imprecise or tentative. *See DuBose v. Lefevre,* 619 F.2d 973, 979 (2 Cir.1980); *Campbell v. Reed,* 594 F.2d 4, 7–8 (4 Cir. 1979). In this case, however, the evidence Mitchell seeks to introduce simply does not reflect a "deal," precise or imprecise, between the government and Hill with respect to possible drug trafficking charges. At an *in camera* hearing before the district court, Officer Carter testified that the police had abandoned their investigation of Hill because they had "found no evidence that . . . he was involved in [drug] distribution." We do not think it possible to draw from Officer Carter's testimony the inference that the authorities dropped the investigation of Hill in exchange for his cooperation at Mitchell's trial, and we therefore conclude that the district court did not err in refusing to admit it.

### C. *Impeachment of Defendant Clarence Mitchell*

■ At trial, Mitchell elected to testify in his own defense. Pursuant to Fed.R.Evid. 609, the district court allowed the government to impeach him on cross-examination with evidence of his prior federal convictions for endeavoring to obstruct a congressional inquiry and for wire fraud. Mitchell contends that the district court erred in permitting cross-examination on these matters because he had not yet been sentenced on the earlier convictions and because the time for appealing those convictions had not yet run.[1]

We disagree. Although Mitchell had not yet been sentenced on his earlier convictions at the time of cross-examination in this case, the district court had denied Mitchell's post-trial motions. As we held in *United States v. Duncan,* 598 F.2d 839, 864 (4 Cir.), *cert. denied,* 444 U.S. 871, 100

---

1. Mitchell ultimately did appeal these convictions to this court, and we affirmed. *See United States v. Mitchell,* 877 F.2d 294 (4 Cir.1989).

S.Ct. 148, 62 L.Ed.2d 96 (1979), a court's acceptance of a jury's verdict is "a sufficient predicate for the use of the 'verdict' for impeachment" in a subsequent trial. *See also United States v. Smith,* 623 F.2d 627, 630–31 (9 Cir.1980); *United States v. Vanderbosch,* 610 F.2d 95, 97 (2 Cir.1979); 3 Weinstein & Berger, *Weinstein's Evidence* ¶ 609[10], at 609–126 & n. 8 (1988). With respect to Mitchell's argument concerning the possibility of an appeal, the short answer is that Rule 609(e) expressly provides that "[t]he pendency of an appeal therefrom does not render evidence of a conviction inadmissible." We therefore hold that the district court did not err in permitting use of Mitchell's prior convictions for impeachment purposes.

D. *Recusal of Judge Ramsey*

Mitchell's next contention is that the district judge should have recused himself because his impartiality in this case could reasonably have been questioned. Mitchell asserts that Judge Ramsey's impartiality could reasonably have been questioned because he denied Mitchell's motion to postpone trial so that Mitchell could assemble evidence concerning an alleged F.B.I. policy of conducting unwarranted investigations of black public officials (the "Fruhmenschen policy"), and also because he failed to disclose his awareness of a taped telephone conversation between Mitchell and his wife. Again, we disagree.

■ Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As we have recently explained, the issue " 'is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances.' " *Aiken County v. BSP Div. of Envirotech Corp.,*

866 F.2d 661, 679 (4 Cir.1989) (citation omitted). "The alleged bias must derive from an extra-judicial source. It must result in an opinion on the merits on a basis other than that learned by the judge from his participation in the matter." *In re Beard,* 811 F.2d 818, 827 (4 Cir.1987). We review a judge's decision to refuse to disqualify himself only for an abuse of discretion. *See Shaw v. Martin,* 733 F.2d 304, 308 (4 Cir.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 230, 83 L.Ed.2d 159 (1984).

■ We do not think that Judge Ramsey abused his discretion by refusing to recuse himself in this case. Mitchell does not assert that Judge Ramsey's denial of his motion concerning the alleged "Fruhmenschen policy" was based on something Judge Ramsey learned outside the courtroom, and the denial of the motion in itself can hardly be seen as evidence of impartiality. Moreover, we do not think that Judge Ramsey's failure to disclose his awareness of the taped telephone conversation between his wife and Mitchell would lead a reasonable observer to question his objectivity. The conversation, which occurred in 1985, was quite innocuous and had no relation whatever to this case. Mitchell simply asked Mrs. Ramsey for assistance with a political fundraiser on his behalf, and Mrs. Ramsey responded that federal law prohibited her from complying with the request, though she did offer to help in other, appropriate ways.

E. *Peremptory Challenges by the Prosecution*

■ Mitchell's final contention, raised for the first time at oral argument, is that the government violated the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* (the Act), by engaging in a firm policy of striking jurors below the age of twenty-five.[2] We decline to address this contention in the context of this appeal.

**2.** In his brief, Mitchell contended that the government's exercise of peremptory challenges to prospective jurors below the age of twenty-five violated the Supreme Court's ruling in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At oral argument, Mitchell's counsel abandoned this theory. In any event,

we have already made clear that *Batson* prohibits only peremptory challenges on the basis of race. *See United States v. Hamilton,* 850 F.2d 1038, 1042–43 (4 Cir.1988), *cert. dismissed sub nom. Washington v. United States,* — U.S. —, 109 S.Ct. 1564, 103 L.Ed.2d 931 (1989).

Two juries were selected in this case, and the members of each were subjected to extensive and searching voir dire. After the first jury was selected, the district court found it necessary to declare a mistrial and so the second jury which heard the case and rendered the verdict was selected and impaneled. Although the matter of the government's striking jurors because of age was fully exposed with respect to each jury, Mitchell never objected to the government's action. We think therefore that the issue has not been preserved for appeal. We set forth the facts and our reasoning more fully:

At the outset, we note that the record does not establish that the government has a "firm policy" of exercising peremptory strikes against jurors below the age of twenty-five. Indeed, the government invites us to consider the composition of the jury which convicted Mitchell in the trial of another charge. It is claimed that that jury included three jurors below the age of twenty-five who were not stricken by the government, although there is no representation that in that case the government had failed to use all of its peremptory strikes, or, if all were used, that they were exercised against jurors who were older than twenty-five years.

Irrespective of what policy, if any, the government may have with respect to jurors younger than twenty-five years old, there can be no doubt that all potential jurors under the age of twenty-five were stricken in this case solely because of their age. The correctness of this statement appears from the colloquies between the district judge and counsel with respect to the government's exercise of its peremptory strikes in each of the two jury selection procedures. By way of explanation, it should be pointed out that this district judge has a policy of requiring the government to explain the exercise of its strikes

and then affording the defendant's counsel the opportunity to be heard in opposition to, or protest of, the government's action. During the discussion of the government's strikes in the selection of the first jury, the prosecution forthrightly said:

> MR. JORDAN: Your Honor, the government struck four individuals who were 25 years old or less.... Two of those individuals are white, two of those individuals are black. It is generally a government concern in voir dire that persons who make those serious decisions that they have to make in criminal cases would like people with as much world experience as possible. We tend to shy away from people who are 25 or under younger people. *In fact, we have stricken from both the alternates list and from this list all persons, white or black, who are under 25, 25 or under.* (emphasis added).

Following this disclosure, Mitchell's counsel was invited to comment on the jurors who were stricken. Counsel did not wish to comment and said that he had "[n]othing further." Of the four jurors stricken because of their age, only two would have served had they not been stricken.

When the second jury which actually decided the case was selected, much the same thing occurred. In explanation of one of his strikes, government counsel said:

> [H]e appeared to be young. So, we struck two whites from the regular panel because of their age for reasons that I believe we articulated at the previous efforts of voir dire in this case. The government is concerned generally to get jurors who have had significant life experiences and have the maturity to make difficult decisions. And Mr. Smith, again 20 or 21 years old, and was a concern to us because he fell into that group that the government generally does not favor having on juries, and in fact, based on

---

Mitchell also contended in his brief that the prosecution violated *Batson* by excluding two potential jurors on the basis of race. At trial, the government explained that it had challenged one potential juror because she had expressed reservations about judging another human being and the other because of his youth. The

district court accepted these racially neutral explanations, and we do not think its decision was clearly erroneous. *See United States v. Tindle,* 860 F.2d 125, 129 (4 Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989).

the government's strikes there are no jurors under 25 I believe.

When the district court specifically invited counsel for defendant to comment, counsel replied that he wished to make no comment.

On these facts, it is manifest that Mitchell did not preserve the point for appeal. Having been fully apprised of what the government had done, Mitchell, through his counsel, twice expressly declined to register any protest or opposition. In light of this waiver, we may consider the merits of the contention only if the purported violation of the Act was "plain error." Fed.R. Crim.P. 52(b). We do not think that the stringent requirements of the plain error rule, which allows relief only in exceptional circumstances, are met by the alleged error of which Mitchell complains. *See United States v. Young,* 470 U.S. 1, 15–16 & n. 14, 105 S.Ct. 1038, 1046 & n. 14, 84 L.Ed.2d 1 (1985); 3A Wright, *Federal Practice & Procedure: Criminal 2d* § 856, at 338 (1982). We are simply unpersuaded that in this case the exclusion of two jurors because of their age could result in a miscarriage of justice. *See United States v. Frady,* 456 U.S. 152, 163 & n. 14, 102 S.Ct. 1584, 1592 & n. 14, 71 L.Ed.2d 816 (1982).

AFFIRMED.