**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4915**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EDDIE D. JONES, a/k/a D,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:09-cr-00196-1)

Argued:  December 6, 2011          Decided:  March 14, 2012

Before WILKINSON, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Troy Nino Giatras, GIATRAS LAW FIRM, LLP, Charleston, West Virginia, for Appellant.  Joseph Franklin Adams, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia, for Appellee.  **ON BRIEF:** R. Booth Goodwin, II, United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The grand jury charged Eddie D. Jones in a one-count indictment with conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846. After several continuances, the district court conducted a bench trial, at the conclusion of which the court convicted Jones of the conspiracy charge. The court subsequently sentenced Jones to 188 months' imprisonment. Jones noted a timely appeal. For the reasons that follow, we affirm.

I.

In May 2009, the United States Drug Enforcement Administration commenced an investigation in Huntington, West Virginia, concerning the trafficking of heroin. Through his investigation, Special Agent Tom Bevins identified Raymond D. Roe as a heroin distributor.

Bevins then used confidential informant Margaret Sines to purchase a quantity of heroin from Roe at his home in Huntington. She was given $50 in exchange for her assistance. Agents subsequently secured and executed a search warrant at Roe's home. Roe and Rachel Kinder were at the residence when the agents executed the search. Kinder gave a written statement identifying Roe as her supplier of heroin. Agents seized the following items from the home: several bags of heroin, a

2

substance used to "cut" heroin, digital scales, a Frito Scoops can with a false bottom, and a firearm.

Roe immediately indicated that he would cooperate in the investigation. In addition to assisting agents in locating certain items in his home, he also gave a statement to agents and agreed to conduct a recorded telephone call with his supplier, Jones. During the telephone conversation, Roe told Jones that he had "put three in the mail" and that he "had 20 G's left." Roe explained that this meant that he had put $3000 in the mail and that he had approximately 20 grams of heroin left to sell.

After a further criminal investigation into the matter, the grand jury indicted Jones with conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846. A bench trial was held, at which Roe, Sines, Kinder, and others testified against Jones. The various witnesses testified, among other things, that: Jones directly sold drugs multiple times while staying at Roe's home; Roe only had drugs when Jones was visiting from Detroit; Roe told various people that Jones was one of his heroin suppliers; and Jones supplied Roe on multiple occasions with large quantities of heroin. The district court ultimately convicted Jones of the charge and sentenced him to 188 months' imprisonment. Jones now appeals.

II.

Jones contends that the district court erred in allowing the government to use the stipulation of facts from a withdrawn plea agreement in its case-in-chief. He further maintains that the court inappropriately permitted the admission of those facts against him even though he thought that he was reserving his right not to have those facts used against him by placing the citation "UCC 1-207" at each place on the withdrawn plea agreement where he signed or initialed a page. Moreover, Jones insists that the district court erred by failing to conduct a proper hearing on the issue.

We review de novo the district court's decision concerning the validity of a waiver of rights. United States v. Cohen, 459 F.3d 490, 494 (4th Cir. 2006). In addition, under a harmless-error analysis, a district court's evidentiary rulings ought not be disturbed unless the error affected the defendant's substantial rights. United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980). To find a district court's error harmless, we need only be able to say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Id. (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)) (internal quotation marks omitted).

4

Assuming, without deciding, that the district court erred in admitting Jones's withdrawn plea agreement, any such error was harmless. As detailed below, even without the stipulated facts, the evidence of Jones's guilt is overwhelming. Further, from the district court's explanation of its verdict, it does not appear that it gave the stipulation of facts in the plea agreement any weight in determining Jones's guilt. Thus, we are unable to say that the district court's judgment was substantially swayed by the alleged error. Any error, therefore, was harmless.

III.

Jones also contends that the district court erred by not presenting him with the option to be tried by a jury of his peers. According to Jones, the jury venire included just one African-American juror and the initial jury panel viewed by Jones had no African-American jurors. Because Jones failed to object at trial, we review only for plain error. See United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). To demonstrate plain error, a defendant must establish (1) that the trial court erred, (2) that the error is clear and obvious, and (3) that the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 732-34 (1993). Even if the defendant meets this burden, we have discretion whether to

5

recognize the error, and we will not do so unless "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 736 (alteration in original) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

In the end, the composition of the jury venire did not prejudice Jones. He freely and voluntarily waived his right to a jury trial, as evidenced by the jury waiver and the district court's extensive colloquy on the matter. He chose a bench trial instead. Further, Jones makes no argument on appeal that his jury trial waiver is invalid. Hence, he cannot prevail.

Assuming for the sake of argument, however, that Jones's statement that "I see them out there . . . [b]ut I don't see me out there," and "[t]hat's not a jury of my peers" is sufficient for us to find that he preserved this issue for appeal, his argument still fails.

Duren v. Missouri, 439 U.S. 357 (1979), sets forth the applicable standard for judging this claim.

> [T]o establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

6

Id. at 364. The first factor is met, so we look to the second one. Unfortunately for Jones, though, we are unable to find any merit in his claim "that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community[.]" Id. As noted by the government, Jones avers that approximately 3.2% of West Virginia residents are African-American. Yet, 2.7% of the jury venire was African-American. We cannot say that this mere half of a percentage point difference in any way demonstrates that Jones's venire was "not fair and reasonable in relation to the number of such persons in the community[.]" Id. "To allow [Jones] to substitute evidence of [de minimis] underrepresentation for evidence of systematic exclusion would go a long way towards requiring perfect statistical correspondence between racial percentages in the venire and those in the community. Such a rule would exalt racial proportionality over neutral jury selection procedure." Truesdale v. Moore, 142 F.3d 749, 755 (4th Cir. 1998). This we decline to do.

IV.

Next, Jones argues that the government failed to disclose potentially exculpatory witnesses and evidence to him in a timely manner. And, according to Jones, the district court

7

erred by denying his motion to continue and allowing the government to use the evidence in its case-in-chief.

"[A] trial court's denial of a continuance is . . . reviewed for abuse of discretion; even if such an abuse is found, the defendant must show that the error specifically prejudiced her case . . . to prevail." United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005). Our review of the district court's admission of evidence is also for an abuse of discretion. United States v. Wilson, 624 F.3d 640, 649 (4th Cir. 2010).

Jones maintains that just nine days before his trial was to commence—but eight months after the grand jury returned its indictment against him—the government informed him that it was adding Andrew Brown and Michelle Klodowski to its list of possible witnesses. Moreover, according to Jones, just seven days before trial, the government told his counsel that Kinder was a potential witness.

Jones further claims that just five days before trial, the government notified him that Sines had been given $50.00 in exchange for acting as a confidential informant. On that same day, Jones states the government informed his attorney of the existence of an audio recording of the controlled buy made by Sines. Jones's attorney received the recording later that day. Moreover, according to Jones, just two days before trial, his

8

attorney received two discs, which purportedly contained evidence favorable to Jones's case.

Concerning the late disclosure of the witnesses named above, as the district court aptly observed, the government had no duty to disclose its witness list to Jones in this case. We have long held that defendants are "not entitled of right, in [a] non-capital case, to such pretrial disclosure[s]." United States v. Anderson, 481 F.2d 685, 693 (4th Cir. 1973). Nevertheless, it appears from the record that the government provided such a list, and then supplemented the list as witnesses were added. Thus, because the government had no obligation to disclose this information in the first place, we are unable to say that the district court abused its discretion either in refusing to grant a continuance because of the late disclosures or in allowing the testimony.

Regarding the admission of the other evidence, Jones has failed to set forth, and we have been unable to identify, any violation on the government's part. There is no requirement that the government "disclose all the minutiae . . . of its evidence, to reveal its trial strategy, and to delineate with total specificity the case it intends to present." Id. at 694 (quoting United States v. Fioravanti, 412 F.2d 407, 411 (3d Cir. 1969)) (internal quotation marks omitted). Thus, we can find no error in the district court's rulings regarding these items. Of

9

course, Jones would have liked to have received all of these materials earlier. But the fact that he did not fails to rise to a statutory or constitutional violation.

We briefly address Jones's contention that the government failed to disclose exculpatory evidence. According to Jones, the aforementioned witnesses and evidence were potentially exculpatory, but he was not made aware of the witnesses and the evidence in time to use it in a reasonable and effective manner at trial. Although Kinder's and Brown's statements are Jencks[1] material and the payment of $50 to Sines is arguably Giglio[2] material, that evidence was provided to Jones in time for him to use effectively at trial. Jones has neglected to demonstrate either to the district court or to us how any of the other evidence was exculpatory. As such, we find no error.

V.

Jones further maintains that the district court erred in convicting him based on unsubstantiated accomplice testimony and

---

[1] The Jencks Act requires the government to produce statements made by a witness that relate to the subject matter of his or her direct examination. 18 U.S.C. § 3500(b).

[2] Under Giglio v. United States, 405 U.S. 150 (1972), when the reliability of a given witness may be determinative of guilt or innocence, disclosure of evidence relating to credibility is required.

conflicting reports concerning the drug weights at issue. This argument essentially challenges the sufficiency of the evidence supporting his conviction. A defendant who challenges the sufficiency of the evidence faces a "heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995)) (internal quotation marks omitted). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be 'confined to cases where the prosecution's failure is clear.'" United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)). We review the record in the light most favorable to the government in determining whether there is sufficient evidence to support the conviction. United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011). "The [fact-finder], not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented . . . ." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). We consider circumstantial as well as direct evidence, and allow the government "the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

In articulating its reasons for convicting Jones, the district court stated that it made its decision primarily on the

11

testimony of Roe. The district court then went on to discuss this testimony.

Roe testified that he had purchased heroin from Jones for a long period of time. He attested that Jones would come to his home, bringing between fifty and one hundred grams of heroin at a time. Roe also recounted that there were times when he would travel to Jones's home in Detroit to meet Jones to purchase heroin. On the three occasions that Roe traveled to Detroit, he received from Jones 30, 40, and 50 grams of heroin, respectively. As such, the district court determined that the evidence was overwhelming that the conspiracy involved a drug weight exceeding one hundred grams of heroin.

The district court also found that Jones was the primary, if not exclusive, source of illegal drugs for Roe. Roe acted as the middleman, allowing Jones to sell heroin to a number of people. Roe asserted that he and Jones shared resources, locations, and customers.

The district court observed that although some of Roe's testimony was inconsistent, there was sufficient corroborating evidence so that it could appropriately rely upon Roe's testimony in reaching its verdict of guilty. For instance, Brown maintained that he was a regular customer of Roe's and that he met Jones several times at Roe's home. Not only that— Brown testified that he had Jones's telephone number, to

12

facilitate purchasing heroin directly from Jones, and that Brown did indeed purchase heroin directly from Jones approximately five times. Brown also testified that during the conspiracy, before anyone was arrested, Roe identified Jones as his supplier. Brown further declared that he knew to inquire about the source of Roe's heroin because Brown preferred the better quality heroin that came from Jones. The district court also found that Kinder corroborated Roe's testimony inasmuch as she saw that Jones was frequently at Roe's home.

Finally, the district court found that Sines corroborated Roe's testimony. According to Sines, she received her heroin from Roe, and Roe told her that it came from Detroit, specifically from Jones. She also affirmed that although she did not have any direct contact with Jones, she saw him at Roe's home when she was there. Roe would negotiate the transaction with Sines, leave, go to where Jones was, and then return to Sines with the drugs. Sines further offered that when Jones was in town, Roe had drugs, but when Jones was out of town, Roe often did not have drugs.

After an exhaustive review of the record, we are convinced that there was sufficient, indeed overwhelming, evidence on which to convict Jones. Although there were inconsistencies in Roe's testimony, it is the province of the district court, not us, to resolve those inconsistencies. See Murphy, 35 F.3d at

13

148. Moreover, we are of the opinion, just as the district court was, that there was ample corroboration by other evidence to establish Jones's guilt. Consequently, this is not a case "where the prosecution's failure is clear." Jones, 735 F.2d at 791 (quoting Burks, 437 U.S. at 17) (internal quotation marks omitted).

Jones briefly contends that the law enforcement officials incorrectly determined the drug weights. The government fails to address this argument directly. Suffice it to say, however, that there was sufficient evidence, as detailed above, to establish the threshold drug weight required to support Jones's conviction. Hence, we find no reversible error as to this issue.

VI.

Jones also avers that the district court committed reversible error at sentencing when it increased his offense level for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1); when it increased his sentencing range through the use of certain criminal history information; and when it refused to decrease his sentence.

We review sentences for reasonableness under an abuse-of-discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). Pursuant to this review, we are required to consider

14

both the procedural and substantive reasonableness of a sentence. Id.; see also Lynn, 592 F.3d at 575. Properly preserved claims of procedural error are subject to harmless-error review. Lynn, 592 F.3d at 576. If the sentence is free of significant procedural error, the appellate court reviews the substantive reasonableness of the sentence. Id. at 575; United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). When judging the reasonableness of a sentence, we "review the district court's legal conclusions de novo and its factual findings for clear error." United States v. Hampton, 441 F.3d 284, 287 (4th Cir. 2006).

First, Jones avers that the district court erred when it increased his offense level for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1). According to Jones, "there was insufficient testimony linking [him] to the weapon in question and insufficient testimony linking the weapon in question to the crime in question."

We find that the district court did not commit clear error in its factual finding that the gun at issue was connected to Jones's criminal activity. Factual determinations underlying sentencing enhancements need be supported by only a preponderance of the evidence, United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003), and the U.S.S.G. § 2D1.1 enhancement is proper if the weapon was "present, unless it is clearly

15

improbable that the weapon was connected with the offense," U.S.S.G. § 2D1.1 cmt. n.3.

Roe testified that Jones brought the gun to his home and left it with Roe during the conspiracy. According to Roe, Jones asked if he could leave the gun at Roe's home. Accordingly, it is not clearly improbable that the weapon that officers recovered at Roe's home was connected to the offense here. As such, imposition of the enhancement was appropriate.

Second, Jones states that the district court erred in increasing his sentencing range through the use of certain criminal history information. He contends that he properly objected to the use of convictions that are over fifteen years removed from the instant offense, but that the district court committed reversible error by overruling his objections.

Section 4A1.2(e)(1) of the Sentencing Guidelines provides the following:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1). Moreover, § 4A1.2(k)(2) of the Sentencing Guidelines sets forth, in relevant part, as follows:

> Revocation of . . . parole . . . may affect the time period under which certain sentences are counted as provided in §4A1.2(d)(2) and (e). For the purposes of

16

> determining the applicable time period, use the following: (i) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence . . . .

U.S.S.G. § 4A1.2(k)(2).

In 1987, Jones was convicted of a felony drug offense involving heroin and was sentenced to a term of imprisonment ranging from two to twenty years. Later that year, he escaped from custody. He was arrested and convicted in 1990 of felony escape and flight and was sentenced to a term of imprisonment of two months to five years. In 1991, he was paroled, but absconded from parole in 1992. He was arrested in 1994. He was paroled again on August 16, 1995. His parole expired on August 16, 1997.

Jones's sentence of imprisonment exceeded one year and one month. Moreover, as noted, he was imprisoned until August 16, 1995. Hence, as the indictment on which he was convicted alleges that he began distributing heroin in August 2008, thirteen years after his release from prison, the commencement of the instant offense obviously occurred within fifteen years of his incarceration. As such, it was appropriate for the district court to include the convictions as it did.

Third, according to Jones, the district court erred in refusing to decrease his sentence. Jones argues that "[a]t the time of his conviction, [he] had spent the majority of his life

17

out of trouble with the law.  This fact was recognized by the lower court but afforded no weight."  Jones then lists several factors that he avers the district court failed to take into account in determining his sentence.

At the sentencing hearing, the district court explained that it had discretion to impose a sentence greater or lesser than the Guidelines range.  It further noted that the primary factors to be considered in determining whether to exercise this discretion were "the nature and circumstances of the offense and the history and characteristics of the defendant."  Then after commenting on Jones's failure to abide by the conditions of parole for his earlier convictions, as well as Jones's being an intelligent man with a family to support, the district court stated that it could think of no justification for granting Jones's request for a variance.

We have long held that a defendant is unable to appeal the district court's decision not to depart downward from the applicable sentencing Guidelines range.  United States v. Bayerle, 898 F.2d 28, 30 (4th Cir. 1990).  Of course, that does not preclude us from reviewing a sentence for reasonableness. In fact, we are mandated to do so.  United States v. Booker, 543 U.S. 220, 261 (2005).  Here, Jones in essence alleges that his sentence was unreasonable inasmuch as, according to him, the district court failed to take into account several relevant

18

factors. Moreover, instead of contending that this issue is unreviewable, the government maintains that the district court's decision not to grant the downward departure was reasonable. Thus, in that both parties appear to be making a reasonableness argument, we will briefly examine Jones's sentence pursuant to that same standard.

From our review of the record, we are firmly convinced that the district court properly considered all of the appropriate and relevant factors in fashioning Jones's sentence. There is nothing to suggest that Jones's criminal history category substantially overrepresented the seriousness of his criminal history or the likelihood that he would reoffend. Consequently, inasmuch as the district court imposed a sentence within the Guidelines range—in fact the sentence was at the bottom end of the Guidelines range—the sentence is reasonable. United States v. Raby, 575 F.3d 376, 381 (4th Cir. 2009) (stating that in an appellate court's substantive review of a sentence, it is proper for it to presume that a sentence is reasonable when it is within the properly calculated Guidelines range).

VII.

Finally, Jones states that the district court committed reversible error by presiding at his sentencing hearing, even though Jones had filed a U.C.C. action against the district

19

court judge.  We review the district court's denial of a motion to recuse for abuse of discretion.  United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003).  But, as here, where the defendant has failed to preserve his recusal argument in the district court, we will review only for plain error.  See Lynn, 592 F.3d at 577.  Thus, in considering this claim, we initially seek to determine whether Jones has demonstrated (1) that the trial court erred, (2) that the error is clear and obvious, and (3) that the error affected his substantial rights.  See Olano, 507 U.S. at 732-34.

Jones attests that before the district court judge sentenced him, it learned that Jones had filed a civil action against him.  Jones contends that "[w]hen this fact is combined with the fact that the trial judge had previously ruled against Mr. Jones on virtually every issue that had been presented to him throughout the course of the trial, the appearance of impropriety can become greater."

Although recusal is appropriate when a judge's "impartiality might reasonably be questioned," see United States v. Mitchell, 886 F.2d 667, 671 (4th Cir. 1989) (quoting 28 U.S.C. § 455(a)) (internal quotation marks omitted), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," see United States v. Lentz, 524 F.3d 501, 530 (4th Cir. 2008) (quoting Liteky v. United States, 510 U.S.

20

540, 555 (1994)) (internal quotation marks omitted).  Except for his dissatisfaction with the district court's rulings, Jones fails to point to any evidence providing a basis to question the judge's impartiality.  See Mitchell, 886 F.2d at 671.  Moreover, he has neglected to point to any prejudice that he suffered as a result of it.  In fact, the district court sentenced Jones at the low end of the Guidelines range.  Consequently, there is no basis on which we can find that the district court judge's failure to recuse himself constituted error, plain or otherwise.

## VIII.

In light of the foregoing, Jones's conviction and sentence are hereby affirmed.

AFFIRMED